**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| HYEWOONG YOON, | ) | |
|     Plaintiff | ) | Civil Action No.: 1:19-cv-10278-PBS |
| v. | ) | |
| SEYEON LEE a/k/a SE-YEON LEE a/k/a | ) | |
| SE YEON LEE a/k/a SE Y. LEE a/k/a | ) | |
| SE-Y. LEE | ) | |
|     Defendant | ) | |

| | | |
|---|---|---|
| HYEWOONG YOON, | ) | |
|     Plaintiff | ) | Civil Action No.: 1:19-cv-10280-WGY |
| v. | ) | |
| JUHYUNG LEE a/k/a JU-HYUNG LEE | ) | |
| a/k/a JU HYUNG LEE a/k/a | ) | |
| JU-H. LEE a/k/a JU H. LEE | ) | |
|     Defendant | ) | |

| | | |
|---|---|---|
| HYEWOONG YOON, | ) | |
|     Plaintiff | ) | Civil Action No.: 1:19-CV-10281-ADB |
| v. | ) | |
| KOREAN BROADCASTING SYSTEM | ) | |
|     Defendant | ) | |

**PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTION TO**
**DISMISS**

    Plaintiff, Hyewoong Yoon ("Mr. Yoon"), submits this consolidated opposition to the

Motions to Dismiss filed by the Defendants, Seyeon Lee ("Ms. Lee"), Juhyung Lee ("Mr. Lee")

and Korean Broadcasting System ("KBS"), ( collectively, "KBS").

**I.      Introduction.**

    Mr. Yoon filed a Complaints in this Court against the Defendants for violating the

Massachusetts Wire Tapping Statute, G.L. Ch. 272 §99(Q), and for defamation and related

claims. The Defendants filed motions to dismiss Mr. Yoon's complaint under the Foreign

Sovereign Immunities Act ("FSIA"), 28 U.S.C. 1604, and based on the doctrine of forum non-conveniens. Neither is a basis to dismiss this suit  because: (1) all of Defendants' acts described in the Complaint fall under the commercial activities exception to the FSIA, 28 U.S.C. 1605(a)(2); (2) wire-tapping falls under the tortious activities exception to the FSIA, 1605(a)(2); and, (3) the Defendants have not met their burden of showing that South Korea is a more convenient forum when Mr. Yoon has filed this suit in his home state.

## II.    The Commercial Activities Exception to the FSIA Precludes Dismissal.

Section 1605 of the FSIA provides for an exception to immunity when:
[1] the action is based upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere, or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.
28 U.S.C. § 1605(a) (2).

"'"Commercial activities" under the "private party test" are those of the type that a private party would engage in for the purpose of trade or commerce." Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992). When the foreign state is acting as a player in the market, such as bidding for a market service through monetary inducement, then the foreign state is engaging in commercial activity even if no profit motive exists. Guevara v. Republic of Peru 468 F.3d 1289, 1303 (2006). Distinguishing between non-commercial and commercial activities, the court in Republic of Argentina 504 U.S. at 616, stated that "[a] foreign government's issuance of regulations limiting foreign currency exchange is a sovereign activity under the Foreign Sovereign Immunities Act, as such authoritative control of commerce cannot

be exercised by a private party, whereas a contract for the sale of goods is a commercial

activity."

> **A.      KBS' News Broadcasting is Commercial Activity Because it is not the "Voice of the Government."**

Television broadcasting is a commercial activity that is excepted from the FSIA under 28

U.S.C. 1605(a)(2). Jin v. Ministry of State Security, 557 F. Supp. 2d 141, 143 (2008); Los

Angeles News Service v. Conus Communications Company Limited Partnership, 969 F. Supp.

579, 586. The rational for this determination is that "many parties do trade and traffic in the

television news business." Id. "The question is not whether the foreign government is acting with

a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the

issue is whether the particular actions that the foreign state performs (whatever the motive

behind them) are the type of actions by which a private party engages in `trade and traffic or

commerce.'" Los Angeles News Service, 969 F. Supp. at 586 (quoting Republic of Argentina,

504 U.S. at 614)). The broadcasting of the type that occurred in this case "is an activity

`customarily carried on for profit' by private individuals and corporations throughout the United

States and Canada. In fact, the broadcasting industry is dominated by private, profit-seeking

enterprises; state-sponsored broadcasting is relatively rare and, at least in the United States,

hovers on the verge of extinction." Id.

News broadcasting of the kind that occurred in this case is distinguished from "official

government commentary" that falls outside of the commercial activity exception to the FSIA.

See Jin at 143 and Bryks v. Canadian Broadcasting Corporation, 906 F. Supp. 204, 207 (1995).

Neither KBS' broadcast nor its broadcasting in general are the voice of the government. KBS is

insulated from government influence by law. Under Article 4(2) of the Act on the Management

of Public Institutions ("Public Institutions Act"), KBS may not be designated as a public

institution. See Declaration of Jaesop Song and accompanying text of the Public Institutions Act

and Broadcasting Act attached as Exhibit A. Under Article 43 of the Broadcasting Act, no person

who was a member of a political party or who held a public office within the last three years may

be a director of KBS. Id. Under Article 6 of the Broadcasting Act, "A broadcast of news reports

shall be impartial and objective." Id. Further, KBS accepts advertising from a highly diverse

group. See KBS' advertising guide from their website attached as Exhibit B, and page 19 for

their list of advertising fees for different kinds of programs. Accordingly, the FSIA provides no

immunity to KBS.

      **B.**       **Mr. Yoon's Claims for Wire-Tapping and Defamation Meet the "U.S.**

              **Connection" Requirement of the Commercial Activities Exception.:**

Mr. Yoon's claims for wire tapping and defamation, meet the "U.S. Connection"

requirement of the commercial activities exception to the FSIA because the claims arose out of

KBS' commercial activities here, or arose out of acts by KBS here, which were done for the

purpose of KBS' commercial activities abroad. The wire-tapping that KBS engaged in occurred

when Ms. Lee was in Allston, Massachusetts recording a phone call with Mr. Yoon without his

permission when he was in Watertown Massachusetts. (Exhibits A and B to the Complaint.) Ms.

Lee came to the United States to make the broadcast. She first came to New Jersey looking for

Mr. Yoon, and then, after receiving his Massachusetts address from his former guardian, came to

Massachusetts looking for him. The video which was later broadcast, which contained the audio

file of the recording of the phone call, and which contained false and damaging statements about

Mr. Yoon, was made in both New Jersey and Massachusetts. The video, in addition to being

broadcast in South Korea, was also widely broadcast in the U.S. See Exhibit C for the section of

KBS' website showing its broadcasting demographics. South Korea, as of 2017, had

approximately two and a half million U.S. viewers. See Exhibit C, page 4. The acts related to the making of the video all occurred here, and they all occurred in connection with KBS' commercial activities both here and in South Korea.

Both KBS, through Ms. Lee, and its producer Mr. Lee, engaged in wire-tapping and defamation for the purpose of its commercial activities, and Mr. Yoon's claims are based on those activities.

**C.     KBS', Under the Exceptions to the FSIA's Tortious Activities Section, 28 U.S.C. § 1605(a)(5)(B), is not Immune from Mr. Yoon's Defamation and Wire Tapping Claims Since Both Claims Arise from KBS' Commercial Activities**

KBS has argued that under 28 U.S.C. § 1605(a)(5)(B) libel (or defamation) and wiretapping, do not fall under the tortious activities exception to the FSIA. Defamation is specifically excepted from the tortious activities exception, 1605(a)(5), by 1605(a)(5)(B). While it's true that defamation doesn't fall within the tortious activities section, it doesn't matter because, in this case, it still fits under the commercial activities section. The vast majority of courts hold that once claims against a foreign state fall within the commercial activities exception, the state's immunity is not restored if those claims are excepted from the tortious activities section by 1605(a)(5)(B), and that 1605(a)(5) only applies to "non commercial torts". Southway v. Central Bank of Nigeria, 994 F. Supp. 1299, 1310-1311 (1988) and cases cited therein. These cases base their holding on the plain meaning of 1605(a)(5) which applies only to conduct "not otherwise encompassed in 1605(a)(2)." Also, the legislative history repeatedly refers to 1605(a)(5) as non-commercial torts. H.R. REP. No. 94-1487 at 20, 21; see also Argentine Republic v. Amerada Hess Shipping Corp. 488 U.S. 428, 439, 441 (1989), (referring multiple times to 1605(a)(5) as the "non commercial torts exception"), El Hadad v. United Arab

Emirates, 69 F. Supp. 2d 69 (1999) (foreign states are not protected from actions based on torts listed in 1605(a)(5)(B) when acting in commercial capacity). As KBS was acting in a commercial capacity by its broadcasting activity when it made the defamatory broadcast, Mr. Yoon's defamation claim against it is not excluded.  See Id.

KBS makes a similar argument as to why it is immune from Mr. Yoon's wire tapping claims. Wire tapping is not excluded from the tortious activities exception, as discussed below. Even if it were excluded, however, from the tortious activities section, KBS' wire tapping was done as part of its commercial activities which falls under 1605(a)(2).

As both Mr. Yoon's wire tapping and defamation claims arise from KBS' commercial activities, this Court has jurisdiction to hear both claims.

### III.    Wire Tapping Falls Under the Tortious Activities Exception to the FSIA

Wire tapping, in addition to falling under the commercial activities exception to the FSIA, also falls under the tortious activities exception, 28 U.S.C. 1605(a)(5). See Therapeutic Corp. v. Nippon Hoso Kyokai. 199 F.3d 1078 (1999) (stating that the district court determined that the Defendant implicitly conceded that Plaintiff's invasion of privacy claim fell within the tortious activities exception to the FSIA), *order withdrawn on other grounds*.

### IV.    This Court Has Personal Jurisdiction Over Juhyung Lee

In order to find exercise personal jurisdiction over Mr. Lee, jurisdiction must be authorized by the Massachusetts Long Arm Statute, M.G.L. Ch. 223A §3 and by the U.S. Constitution. Under the long arm statute, a court may exercise personal jurisdiction over a person who, either directly or through an agent, causes tortious injury by an act of omission in the Commonwealth. M.G.L. Ch. 223A §3(c). Mr. Lee is the producer of KBS, acting through his agent, Ms. Lee, who came to Massachuetts and engaged in wire tapping and making a video with

false and damaging statements about Mr. Yoon. See Complaint and Exhibits A and B. For that reason, this court has personal jurisdiction over Mr. Lee under the Massachusetts Long Arm statute.

Mr. Lee could argue that he is not personally liable for acts, such as participating in the making of the video, because those acts are shielded by KBS' corporate form. However, In Massachusetts, "corporate officers are personally liable for any tortious activity in which they personally participate. A corporate officer may be liable for his own fraudulent representations and is not protected because his representations were made while acting in official corporate capacity." Instant Image Print Shop, Inc. v. Lavigne, Keating, Halstead, Inc. 1998 Mass.App.Div. 74 (1998) (quoting Frontier Management Co. v. Belboa Ins. Co., 658 F.Supp. 987, 991 (D. Mass. 1986). "What is required is some showing of direct personal involvement by the corporate officers in some decision or action which is causally related to plaintiff's injury." Image Print Shop, Inc. at 75 (quoting Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 907 (1st Cir.1980).

Mr. Lee's actions, through Ms. Lee, also give rise to personal jurisdiction under the U.S. Constitution because he had minimum contacts with the state of MA, and Mr. Yoon's injuries arose from those contacts. International Shoe v. Washington, 326 U.S. 310 (1945). Ms. Lee, after coming to Massachusetts, can't claim that she is not subject to this court's jurisdiction for the torts that she committed while here. Similarly, Mr. Lee, who acted through Ms. Lee, had purposeful contact with Massachusetts that caused Mr. Yoon's injuries, and is therefore also subject to this Court's jurisdiction. Mr. Lee was not an ordinary employee of KBS who had no say in matters including what kinds of programs were broadcast. Rather, he was the producer of KBS in charge of deciding what to film and what to broadcast for KBS.

V.    **Massachusetts in Not an Inconvenient Forum for this Case to Be Heard In.**

**A.      There is no adequate alternative forum for Mr. Yoon for his claims of Wire**

**Tapping and Defamation**.

The first requirement for dismissal on forum non-conveniens grounds is that there be an

adequate alternative forum, and the Defendant bears the burden of showing that such forum

exists. Imamura v. General Electric Company, 2019 WL 1513454 (2019) (quoting Iragorri v.

Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000)). If an adequate alternative forum exists, the

court will then weigh the public and private interest factors of hearing the case versus allowing it

to be heard in another forum. Id.

In Piper v. Reyno, 454 U.S. 235, 254 (1981), the court stated:

Of course, if the remedy provided by the alternative forum is so clearly inadequate or
unsatisfactory that it is no remedy at all, the unfavorable change in law may be given
substantial weight; the district court may conclude that dismissal would not be in the
interests of justice.

Mr. Yoon has no alternative forum at all to have his wire-tapping claim heard. It is not

illegal in South Korea for an individual who is a party to a phone conversation to record the call

without the other party's consent. See Exhibit D, affidavit of Jin-Woo Lee, last sentence of

Paragraph 2. It is only illegal for an individual to record a phone conversation that he or she is

not a party to. Id.

In Imamura, where this Court dismissed on forum non-conveniens grounds, finding that

Japan was a more convenient forum for the dispute. There, although the Plaintiffs would not

have been able to bring a claim against the same defendant in Japan as they brought in this

Court, they still would have been able to bring that claim against another party in Japan. In this

case, Mr. Yoon could not bring his wire-tapping claim against anyone in South Korea since wire

tapping performed by a party to the phone conversation being recorded is not illegal there.

Exhibit D. While there is a law suit pending in South Korea against KBS, wire-tapping is not one of the claims.

Nor is South Korea an adequate forum for Mr. Yoon to bring his defamation claim. In South Korea, defamation is a criminal act. The maximum compensation awarded to a Plaintiff is 50 million won: approximately $42,000.00. See Exhibit E for the relevant sections of South Korea's defamation law). With the number of viewers who saw the defamatory broadcast, and with the amount of damages as a result described in the complaint, $42,000.00 would be highly inadequate to compensate Mr. Yoon for his defamation claim.

**B.     The Private and Public Interest Factors Weigh Against Dismissal..**

Unlike the plaintiffs in Imamura who were all Japanese residents, Mr. Yoon is a resident of Massachusetts and has chosen Massachusetts to bring this action in. So, KBS bears a "heavy burden" of showing that this choice results in inconvenience to it which is out of all proportion to his convenience of having the case heard here. See Piper, 454 U.S.  at 236.

**i.     Private Interest Factors Support This Court Hearing this Case.**

**a.     Parties Will Have Relative Ease of Access to Sources of Proof.**

The acts giving rise to this case occurred in Massachusetts. Mr. Yoon is a main witness to these events. Other Massachusetts witnesses may include individuals from Allston, Massachusetts who witnessed Ms. Lee coming into BBQ searching for Mr. Yoon to make the recording. Additionally, Hyunwook Joo, the individual who provided Ms. Lee with Mr. Yoon's address, and who also initially provided her with the false information about Mr. Yoon, lives in New Jersey.

The physical evidence in this case includes mainly the recording of the phone conversation and the broadcast. Mr. Yoon is already in possession of this evidence. Even if

similar evidence is required from South Korea, it would be on electronic files that could be easily emailed.

### b. The Availability of Compulsory Process and Cost of Obtaining Attendance of Unwilling Witnesses Does Not Support Dismissal.

Almost, if not all, of the evidence in this case, as described above, is in the hands of the Parties, or of U.S. residents. So compulsory process factors do not weigh in favor of another forum.

### c. Trial Costs Will Not Be Substantially Higher in the United States.

Because the events giving rise to this case happened here, Mr. Yoon and several witness live in the U.S., and because most of the evidence is in the hands of the Parties and can be easily exchanged, trial costs will not be substantially higher in the United States.

### d. Mr. Yoon Will be able to Enforce any Judgment he Obtains.

In the event a judgment enters in this case, South Korea would honor it. See Exhibit F for the relevant section of South Korea's judgment recognition rules. KBS also has a branch in the U.S., and enforcement may be possible through KBS' U.S. assets as well South Korean assets.

### ii. Public Interest Factors Support This Court Hearing This Case.

### a. There is a Local Interest in Adjudicating this Lawsuit.

Mr. Yoon is 23 years old and chose to live in Massachusetts for its educational and work opportunities. The United States and Massachusetts have an interest in protecting their residents from wire-tapping and defamation, especially from acts occurring in Massachusetts like what

happened here. While South Korea also has an interest in protecting its citizens from defamation, it does not have a law against wire-tapping similar to Massachusetts' law.  (See Exhibit D.)

**b.      There Will be No Choice of Law Questions or Application of Foreign Law.**

As the acts giving rise to this case occurred mainly in Massachusetts, Massachusetts law would apply. The wire tapping statute of MA does not have an equivalent in South Korea. Exhibit D.

**c.      There Will Be No Increased Administrative Burdens on the Court's Docket.**

This case, unlike Imamura, does not involve a large number of parties, and presents no more administrative concerns that any typical case.

As the public and private interest factors weigh in favor of the Court maintaining jurisdiction over this case, KBS cannot meet its burden of showing that the factors "strongly favor resolving the claims in the alternative forum." Imamura, 2019 WL at (quoting Iragorri, 203 F.3d at 12).

## VI.   Conclusion.

In conclusion, KBS' acts give rise to the commercial and tortious activities exceptions to the Foreign Sovereign Immunities Act, giving this Court jurisdiction over this case.  Moreover, this case was brought in the most convenient forum and the home state of the Plaintiff, and should not be dismissed on forum-non conveniens grounds.

WHEREFORE, Plaintiff respectfully requests that Defendants' Motion to Dismiss be Denied.

Respectfully Submitted,
HYEWOONG YOON,

11

By his Attorneys.

/s/ Joseph Perl_____
Joseph Perl
B.B.O. 680509
Law Office of Joseph Perl
203 Arlington St., Suite 2
Watertown, MA 02472
781-704-7047
perl@perlattorney.com


/s/ Bernard D. Posner_____
Bernard D. Posner, Esquire
BBO No. 659020
FURMAN GREGORY DEPTULA
4 13TH Street, Suite 2
Boston, MA  02129
(617)886-6145
bernard@fgd-law.com