서울특별시 종로구 종로19, 403-1호
(종로1가, 르메이에르 종로타운)

공증인가법무법인 **신한**
Shinhan Law & Notary Office

(전화) 778-6313~4
(팩스) 771-8189

Registered No.   2019 - 5699

# NOTARIAL CERTIFICATE

**SHINHAN LAW & NOTARY OFFICE**
#403-1, 19, Jong-ro , Jongno-gu,
Seoul, Korea



210mm X 297mm
보존용지(1종) 70g/㎡

Jaeseop Song – Korean Bar Registration Number 9942
jssong@shinkim.com
Shin & Kim
23F, D-Tower (D2), 17 Jongno 3-gil
Jongno-gu, Seoul 03155, Korea
Telephone: (82) 2-316-4349
Facsimile: (82) 2-756-6226

# DECLARATION OF JAESEOP SONG

I, Jaeseop Song, declare as follows:

1. I am an active member of the Korean Bar Association and a Partner with Shin & Kim, a law firm in the Republic of Korea. Except for those matters stated on information and belief, I make this declaration based upon personal knowledge and, if called upon to do so, I could and would so testify.

2. Shin & Kim is a counsel for Genesis BBQ Group, Mr. Hong Geun Yoon and Mr. Hye Woong Yoon regarding the case against Korean Broadcasting System ("KBS"). Please find my answers at the below regards the questions from BBDOTQ which is the subsidiary of Genesis BBQ Group.

3. KBS is not a public institution in the Republic of Korea. On the basis of Article 4(2) of the ACT ON THE MANAGEMENT OF PUBLIC INSTITUTIONS, KBS may not be designated as a public institution.

4. KBS shall be a juristic person under Article 43 of the BROADCASTING ACT and the following persons shall be disqualified as a director of KBS in accordance with Article 48(1).

   - A member of a political party under Article 22 of the Political Parties Act, or a person for whom three years have not passed after his/her status as member of a political party was lost under the same Act;

- A person referred to in the subparagraphs of Article 33 of the State Public Officials Act;

- A person for whom three years have not passed after he/she was retired from public office assigned through an election under Article 2 of the Public Official Election Act;

- A person for whom three years have not passed after he/she served as an advisor or a consultant on broadcasting, communications, law, management, etc. to make a candidate elected in a presidential election under Article 2 of the Public Official Election Act;

- A member of the Presidential Transition Committee established under Article 6 of the Presidential Transition Act for whom three years have not passed after his/her status as Committee member was lost.

I declare that the foregoing is true and correct, and that I executed this declaration on May 22, 2019, at Seoul, Republic of Korea.

*[signature]*

Jaeseop Song

서울특별시 종로구 종로19, 403-1호
(종로1가, 르메이에르 종로타운)

**공증인가법무법인 신한**
Shinhan Law & Notary Office

(전화) 778-6313~4
(팩스) 771-8189

| | |
|---|---|
| 위 번역문은 원문과 상위없음을 서약합니다.<br><br>2019년 05월 24일<br><br>서약인  임태열  (인) | I swear that the attached translation is true to the original.<br><br>May 24, 2019<br><br>Signature  *Lim Tae Yeol* |

등부 2019 년 제 5699호

# 인 증

위 임태열——————— 은 본 공증인의 면전에서 위 번역문이 원문과 상위없음을 확인하고 서명날인 하였다.

_____

_____

2019년 05월 24일
이 사무소에서 위 인증한다.

공증인가 법무법인 신한

서울중앙지방검찰청소속

서울특별시 종로구 종로19, 403-1호
(종로1가, 르메이에르 종로타운)



공증담당변호사   윤 석 정

본 사무소는 인가번호 제325호에 의거하여 2005년 01월 03일 법무부 장관으로부터 공증인 업무를 행할 것을 인가 받았다.

Registered No.  2019-5699

# Notarial Certificate

LIM, TAE YEOL——————— personally appeared before me, confirmed that the attached translation is true to the original and subscribed his(her) name.

This is hereby attested on this 24th day of May 2019 at this office.

SHINHAN LAW & NOTARY OFFICE

Seoul Central
District Prosecutor's Office
#403-1, 19, Jong-ro, Jongno-gu,
Seoul, Korea

*Yoon S. J.*

Signature of the Notary Public
YOON SUK JUNG

This office has been authorized by the Minister of Justice, the Republic of Korea, to act as Notary Public Since 3, Jan. 2005 Under Law No.325.

210mm X 297mm
보존용지(1종) 70g/㎡

# ACT ON THE MANAGEMENT OF PUBLIC INSTITUTIONS

```
                          Act No.  8258, Jan. 19, 2007
           Amended by Act No.  8635, Aug.  3, 2007
                          Act No.  8696, Dec. 14, 2007
                          Act No.  8852, Feb. 29, 2008
                          Act No.  9277, Dec. 31, 2008
                          Act No.  9345, Jan. 30, 2009
                          Act No.  9513, Mar. 25, 2009
                          Act No.  9829, Dec. 29, 2009
                          Act No. 10286, May 17, 2010
                          Act No. 10896, Jul. 25, 2011
                          Act No. 11690, Mar. 23, 2013
                          Act No. 11845, May 28, 2013
                          Act No. 12268, Jan. 21, 2014
                          Act No. 12673, May 28, 2014
                          Act No. 14076, Mar. 22, 2016
                          Act No. 14461, Dec. 27, 2016
```

**Article 1 (Purpose)**

The purpose of this Act is to provide for basic matters concerning the operation of public institutions as well as matters necessary for the establishment of self-controlling and accountable management system, with the aim of rationalizing management and enhancing transparency in operation, thereby contributing to the improvement of public institutions' services to the people.

**Article 2 (Scope of Application, etc.)**

(1) This Act shall apply to the public institutions designated and publicly notified under the provisions of Articles 4 through 6.

(2) This Act shall apply in preference to any other Acts as to public institutions, notwithstanding any pertinent provisions therein contrary to this Act, except as otherwise expressly provided for in this Act to follow the pertinent provisions in any other Act.

**Article 3 (Guarantee for Self-Controlling Operation)**

The Government shall ensure a self-controlling operation of public institutions in order to establish the accountable management system in public institutions.

**Article 4 (Public Institutions)**

(1) The Minister of Strategy and Finance may designate any of the following institutions, which are a legal entity, organization, or institution (hereinafter referred to as "institution") other than the State or a local government, as a public institution: <Amended by Act No. 8852, Feb. 29, 2008>

   1. An institution directly established pursuant to other Act with an investment by the Government;
   2. An institution for which the amount of the Government grants (in cases of an institution to whom some affairs of the Government are directly commissioned, or a monopoly is granted, pursuant to statutes, the revenue earned from its commissioned affairs or monopoly shall be included; hereinafter the same shall apply) exceeds one-half of the amount of its total revenue;
   3. An institution which the Government holds at least 50/100 of the outstanding shares of, or secures de facto control over decision-making on policies through the exercise, etc. of the power to appoint executive officers with at least thirty percent of such outstanding shares;
   4. An institution which the Government together with an institution falling under any of subparagraphs 1 through 3 hold at least 50/100 of the outstanding shares of, or secure de facto control over decision-making on policies through the exercise etc. of the power to appoint executive officers with at least thirty percent of such outstanding shares;
   5. An institution which a single institution, or two or more institutions, falling under any of subparagraphs 1 through 4, hold at least 50/100 of the outstanding shares of, or secure de facto control over decision-making on policies through the exercise, etc. of the power to appoint executive officers with at least 30/100 of such outstanding shares;
   6. An institution established by an institution falling under any of subparagraphs 1 through 4 with an investment by the State or the establishing institution.

(2) Notwithstanding the provisions of paragraph (1), the Minister of Strategy and Finance may not designate any of the following institutions as a public institution: <Amended by Act No. 8696, Dec. 14, 2007; Act No. 8852, Feb. 29, 2008>

   1. An institution established for the purpose of mutual aid, improvement of welfare, enhancement of rights and interests, or maintenance of order in business transactions between its members;
   2. An institution which a local government establishes and is involved in its management;
   3. The Korea Broadcasting System established under the Broadcasting Act and the Korea Educational Broadcasting System established under the Korea Educational Broadcasting System Act.

(3) Matters necessary for the criteria and method for calculating the amount of the Government grants and the amount of the total revenue referred to in the provisions of paragraph (1) 2 and the criteria for the secured de facto control referred to in the provisions of subparagraphs 3 through 5 of the said paragraph shall be prescribed by Presidential Decree.

# BROADCASTING ACT

```
                             Act No. 3978, Nov. 28, 1987
               Amended by Act No. 4183, Dec. 30, 1989
                             Act No. 4263, Aug.  1, 1990
                             Act No. 4441, Dec. 14, 1991
                             Act No. 5145, Dec. 30, 1995
                             Act No. 5529, Feb. 28, 1998
                             Act No. 6139, Jan. 12, 2000
                             Act No. 6690, Apr. 20, 2002
                             Act No. 6803, Dec. 18, 2002
                             Act No. 6869, May 10, 2003
                             Act No. 6905, May 29, 2003
                             Act No. 7188, Mar. 11, 2004
                             Act No. 7190, Mar. 12, 2004
                             Act No. 7213, Mar. 22, 2004
                             Act No. 7370, Jan. 27, 2005
                             Act No. 7498, May 18, 2005
                             Act No. 7655, Aug.  4, 2005
                             Act No. 7815, Dec. 30, 2005
                             Act No. 8050, Oct.  4, 2006
                             Act No. 8060, Oct. 27, 2006
                             Act No. 8568, Jul. 27, 2007
                             Act No. 8867, Feb. 29, 2008
                             Act No. 9280, Dec. 31, 2008
                             Act No. 9785, Jul. 31, 2009
                             Act No. 9786, Jul. 31, 2009
                             Act No. 10165, Mar. 22, 2010
                             Act No. 10166, Mar. 22, 2010
                             Act No. 10363, jun.  8, 2010
                             Act No. 10856, Jul. 14, 2011
                             Act No. 11199, Jan. 17, 2012
                             Act No. 11373, Feb. 22, 2012
```

```
                                       Act No. 11710, Mar. 23, 2013
                                       Act No. 12033, Aug. 13, 2013
                                       Act No. 12093, Aug. 13, 2013
                                       Act No. 12677, May  28, 2014
                                  Act No. 12743, jun.   3, 2014
                                       Act No. 13220, Mar. 13, 2015
                                       Act No. 13341, jun. 22, 2015
                                  Act No. 13519, Dec.   1, 2015
                                       Act No. 13580, Dec. 22, 2015
                                       Act No. 13821, Jan. 27, 2016
                                  Act No. 13978, Feb.   3, 2016
                                       Act No. 14598, Mar. 14, 2017
                                       Act No. 14839, Jul. 26, 2017
```

**Article 1 (Purpose)**

The purpose of this Act is to promote the protection of the rights and interests of the viewers, the formation of the democratic public opinion and the improvement of national culture, and to contribute to the development of broadcasting and advancement of public welfare, by guaranteeing the freedom and independence of broadcasting and by enhancing public responsibilities of broadcasting.

**Article 2 (Definitions)**

The definitions of terms used in this Act shall be as follows: <Amended by Act No. 7213, Mar. 22, 2004; Act No. 8060, Oct. 27, 2006; Act No. 8301, Jan. 26, 2007; Act No. 10856, Jul. 14, 2011; Act No. 11710, Mar. 23, 2013; Act No. 13220, Mar. 13, 2015; Amended by Act No. 13519, Dec. 1, 2015; Act No. 13580, Dec. 22, 2015; Act No. 13821, Jan. 27, 2016>

  1. The term "broadcasting" means planning, programming or producing broadcast programs, and transmitting them to the general public (including the recipients under individual contracts; hereinafter referred to as "viewers") through telecommunication facilities, referring to any of the following items:

    (a) Television broadcasting: Broadcasting which transmits broadcast programs comprised of the instant images of stationary or moving objects, and of the voices, sounds, etc. incidental thereto;

    (b) Radio broadcasting: Broadcasting which transmits broadcast programs comprised of voices, sounds, etc.;

    (c) Datacasting: Broadcasting (excluding provision or mediation of such datacasting through communications networks, such as the Internet; hereinafter the same shall apply) which transmits broadcast programs comprised of, mainly, data (referring to the letters, numerals, diagrams, graphs, images, and other information systems), and of the images, voices, sounds and their combinations incidental thereto using the channels of the broadcasting business entities;

 (d) Digital multimedia broadcasting: Broadcasting which transmits television broadcasting, radio broadcasting, and datacasting in complexity using multi-channels for the main purpose of receiving while moving;

2. The term "broadcasting business" means a business of providing the following broadcasts:
 (a) Terrestrial broadcasting business: A business of managing and operating wireless stations on the ground aimed for broadcasting, and of providing broadcasts by using them;
 (b) CATV broadcasting business: A business of managing and operating CATV broadcasting stations (referring to the cable broadcasting station facilities and the employees thereof in whole for providing multi-channel broadcasting; hereinafter the same shall apply), and of providing broadcasts by using the transmission and line facilities;
 (c) Satellite broadcasting business: A business managing and operating wireless stations by owning or leasing the wireless facilities of artificial satellites, and of providing broadcasts by using them;
 (d) Program-providing business: A business of using a specific channel by entering into a contract to exclusively use the whole or some of airing hours of the specific channel with a terrestrial broadcasting business entity, a CATV broadcasting business entity, or a satellite broadcasting business entity;

3. The term "broadcasting business entity" means any of the following:
 (a) Terrestrial broadcasting business entity: A person who has obtained a license under Article 9 (1) for operating a terrestrial broadcasting business;
 (b) CATV broadcasting business entity: A person who has obtained a license under Article 9 (2) for operating a CATV broadcasting business;
 (c) Satellite broadcasting business entity: A person who has obtained a license under Article 9 (2) for operating a satellite broadcasting business;
 (d) Program provider: A person who has registered or obtained approval under Article 9 (5) for operating a program-providing business;
 (e) Community radio broadcasting business entity: A person who has obtained a license under Article 9 (11) for providing radio broadcasting for public purposes at ten watt or lower antenna power;

4. The term "CATV relay broadcasting" means receiving and relay-transmitting (including the audio and video recordings which do not alter any broadcast programs; hereinafter the same shall apply) a terrestrial broadcast (referring to a broadcast done using the wireless stations on the ground aimed for broadcasting), etc.;

5. The term "CATV relay broadcasting business" means a business of providing CATV relay broadcasts;

6. The term "CATV relay broadcasting business entity" means a person who has obtained a license under Article 9 (2) for operating a CATV relay broadcasting business;

7. The term "CATV music broadcasting" means a transmission of music recorded on phonograms sold or distributed under the Music Industry Promotion Act;

8. The term "CATV music broadcasting business" means a business of providing the CATV music broadcasts;

9. The term "CATV music broadcasting business entity" means a person who has registered under Article 9 (5) for operating a CATV music broadcasting business;

10. The term "electric sign board broadcasting" means an act of presenting a broadcast program which includes news reports on an electric sign board at all times or continually for a specified period of time;

11. The term "electric sign board broadcasting business" means a business of providing electric sign board broadcasting;

12. The term "electric sign board broadcasting business entity" means a person who has registered under Article 9 (5) for operating an electric sign board broadcasting business;

13. The term "signal transmission network business" means a business of installing and operating cable or wireless signal transmission and line facilities in order to transmit the broadcast programs from CATV broadcasting stations to viewers;

14. The term "signal transmission network business entity" means a person who has registered under Article 9 (10) for operating a signal transmission network business;

15. The term "broadcast programming" means an act of deciding the types, content, quantity, time, and arrangements of the items to be broadcast;

16. The term "broadcast field" means an area of broadcast programs classified into news reports, culture, entertainment, etc.;

17. The term "broadcast program" means the broadcast content forming a unit of broadcast programming;

18. The term "general programming" means an act of organizing the broad cast programs in order to form a mutual harmony between the diverse broadcast fields such as news reports, culture and entertainment;

19. The term "specialized programming" means an act of specially organizing broadcast programs of a particular broadcast field;

20. The term "pay broadcast" means a broadcast provided in return for a price by several channel units, channels or broadcast programs under a contract with viewers;

20-2. The term "channel" means a unit of television broadcasting, radio broadcasting or datacasting provided in the form of continuous flow or information system through the same frequency band;

21. The term "commercial" means any broadcast content aiming at advertisements;

22. The term "announcement of sponsors" means an announcement of the names or trade names, etc. of others after receiving from them the expenses, goods, services, manpower or places required directly or indirectly for the production of a broadcast program;

23. The term "person in charge of broadcast programming" means a person who makes the decisions on broadcast programming and takes the responsibility therefor;

24. The term "news report" means programming a broadcast program of coverage and report, reviews, commentaries, etc. for current events with regard to overall politics, economy, society, culture, etc. inside and outside Korea;

25. The term "general watching and listening right" means the right of the people to watch and listen to the broadcasts of sports games and other major events that are greatly popular with them;

26. The term "technology-combined service" means a service provided through the mixed use of modes of transmission of terrestrial broadcasting business, CATV broadcasting business and satellite broadcasting business, or mixed use of modes of transmission of such broadcasting businesses with the mode of transmission of business providing Internet multimedia broadcast service defined under subparagraph 4 (a) of Article 2 of the Internet Multimedia Broadcast Services Act;

27. The term "external producer" means any person who produces broadcasting programs to provide them to broadcasting business entities, such as independent producers of broadcast pictures and companies specializing in cultural industries defined under subparagraphs 20 and 21 of Article 2 of the Framework Act on the Promotion of Cultural Industries.

### Article 3 (Protection of Rights and Interests of Viewers)

A broadcasting business entity shall encourage the viewers to participate in decision-making with regard to planning, programming, or production of broadcast programs, and shall make the results of broadcasts serve the viewers' interests.

### Article 4 (Freedom and Independence of Broadcast Programming)

(1) The freedom and independence of broadcast programming shall be guaranteed.

(2) No one shall regulate or interfere with the broadcast programming unless as prescribed by this Act or other Acts.

(3) A broadcasting business entity shall appoint a person in charge of broadcast programming, and make an official announcement of his name during broadcasting hours at least once in a day, and guarantee the autonomous broadcast programming for the person in charge of broadcast programming.

(4) A broadcasting business entity engaged in general programming or specialized programming of news reports shall, in order to guarantee an autonomy in the production of broadcast programs, institute a covenant on broadcast programming, reflecting the opinions of the persons engaged in data collection and production, and shall publicly announce it.

### Article 5 (Public Responsibility of Broadcasting)

(1) A broadcast shall respect the dignity and value of human beings as well as the fundamental democratic order.

(2) A broadcast shall contribute to unifying the people, harmoniously developing the State, and forming the public opinion democratically, and shall not promote any discords among regions, generations, classes, and sexes.

(3) A broadcast shall not defame any third party's reputation or infringe on his/her rights.

(4) A broadcast shall not promote crimes, immoral conducts or a speculative spirit.

(5) A broadcast shall not promote lewdness, decadence or violence which has a negative influence on a sound family life and on a guidance of children and juveniles.

**Article 6 (Impartiality and Public Interest of Broadcasting)**

(1) A broadcast of news reports shall be impartial and objective.

(2) A broadcast shall not be discriminative in broadcast programming on account of sex, age, occupation, religion, belief, class, region, race, etc.: Provided, That the foregoing shall not apply where a broadcasting business entity engaged in a specialized programming with respect to a missionary work of religion within the limit of a relevant broadcast field.

(3) A broadcast shall respect the ethical and emotional sentiments of people, and contribute to the safeguard of the fundamental rights of people and the advancement of international friendship.

(4) A broadcast shall protect and enhance people's right to knowledge and freedom of expression.

(5) A broadcast shall strive to faithfully reflect the interests of the groups or classes that are relatively small in number or at a disadvantage in realization of the pursuit of their interests.

(6) A broadcast shall contribute to the balanced development of local communities and the promotion of national cultures.

(7) A broadcast shall facilitate its social education functions, and diffuse and disseminate useful living information, and contribute to the qualitative improvement of people's cultural life.

(8) A broadcast shall contribute to the propagation of standard language, and endeavor to refine and purify the language.

(9) A broadcast shall, in publicly announcing the policies, etc. of the Government or a specific group, strive to provide an equal opportunity to other groups having different opinions, and also endeavor to maintain a balance in organizing the broadcast programs with respect to each party of political interests.

**Article 7 (Scope of Application)**

Matters concerning broadcasting shall be governed by this Act except as otherwise prescribed in other Acts.

**Article 8 (Restrictions, etc. on Ownership)**

(1) Where a broadcasting business entity issues stocks, they shall be registered ones.

(2) No one shall own more than 40/100 of the total stocks or equity shares of a terrestrial broadcasting business entity or a program provider that engages in general programming or specialized programming of news reports, including the stocks or equity shares owned by persons having a special relationship prescribed by Presidential Decree (hereinafter referred to as "related party"): Provided, That the foregoing shall not apply to any of the following cases: <Amended by Act No. 7213, Mar. 22, 2004; Act No. 8060, Oct. 27, 2006; Act No. 9786, Jul. 31, 2009>

   1. Where the State or a local government owns stocks or equity shares of a broadcasting business entity;

   2. Where the Foundation for Broadcast Culture established under the Foundation for Broadcast Culture Act owns stocks or equity shares of a broadcasting business entity;

   3. A person referred to in the subparagraphs of Article 33 of the State Public Officials Act;

   4. A person for whom three years have not passed after he/she was retired from public office assigned through an election under Article 2 of the Public Official Election Act;

   5. A person for whom three years have not passed after he/she served as an advisor or a consultant on broadcasting, communications, law, management, etc. to make a candidate elected in a presidential election under Article 2 of the Public Official Election Act;

   6. A member of the Presidential Transition Committee established under Article 6 of the Presidential Transition Act for whom three years have not passed after his/her status as Committee member was lost.

(2) Detailed scope of persons who serve as advisors or consultants under paragraph (1) 5 shall be prescribed by Presidential Decree.

**Article 49 (Functions of Board of Directors)**

(1) The board of directors shall deliberate on and resolve the matters falling under any of the following subparagraphs:

   1. Matters concerning the public responsibility of the broadcasts conducted by the System;

   2. Basic operational plans for the broadcasts conducted by the System;

   3. Plans for budget and funds;

   4. Use of reserve funds and a carrying forward of the budget;

   5. Settlement of accounts;

   6. Evaluation of management of the System, and its public announcement;

   7. Proposal for the appointment of the president and auditor, and approval of the appointment of the vice president;

   8. Establishment and closure of the regional broadcasting stations;

   9. Acquisition and disposition of the permanent properties;

   10. Borrowing of long term loans, and issuing of bonds and the plans for redemption;

   11. Disposition of the profits and losses;

   12. Contributions to other enterprises;

   13. Modification of the articles of incorporations;

   14. Formulation, amendment and abolition of the regulations as prescribed by the articles of incorporation;

   15. Other matters deemed as especially necessary by the board of directors.

(2) The board of directors may, if deemed as especially necessary, request the auditor to make an audit of the System.

**Article 50 (Executives)**

(1) The System shall have, as its executives, one president, up to two vice presidents, up to eight managing directors, and one auditor.

(2) The president shall be appointed by President upon a proposal by the board of directors. In such cases, the president shall undergo a personnel hearings conducted by the National Assembly. <*Amended by Act No.*

(4) Development of the aggregate impact indicator among media under paragraph (3) 2 shall be completed by December 31, 2012.

(5) The composition and operation of the Media Diversity Promotion Committee and other necessary matters shall be prescribed by Presidential Decree.

**Article 35-5 (Broadcasting Market Competition Evaluation Committee)**

(1) The Korea Communications Commission shall establish a Broadcasting Market Competition Evaluation Committee to build the efficient competition structure of broadcasting markets (including Internet multimedia broadcasting) and create an environment for fair competition in broadcasting markets.

(2) The Broadcasting Market Competition Evaluation Committee shall be comprised of nine members, who are commissioned by the Chairperson of the Korea Communications Commission with the consent of the Korea Communications Commission.

(3) The Broadcasting Market Competition Evaluation Committee may request any broadcasting business entity and Internet multimedia broadcasting business entity defined under subparagraph 5 of Article 2 of the Internet Multimedia Broadcast Services Act (hereinafter referred to as "Internet multimedia broadcasting business entity") to submit materials necessary for evaluating the status of competition pursuant to paragraph (1). <Amended by Act No. 13580, Dec. 22, 2015>

(4) The Korea Communications Commission shall conduct an annual evaluation of the status of competition in broadcasting markets and report the results of the annual evaluation to the National Assembly within three months of the completion of the evaluation.

(5) Detailed criteria, procedures and methods for evaluation of the status of competition, the composition and operation of the Broadcasting Market Competition Evaluation Committee and other necessary matters shall be prescribed by Presidential Decree.

**Articles 36 through 40 Deleted.** <by Act No. 10165, Mar. 22, 2010>

**Articles 41 and 42 Deleted.** <by Act No. 8867, Feb. 29, 2008>

**Article 42-2 (Establishment of Regional Broadcasting Development Committee)**

There is hereby established a Regional Broadcasting Development Committee under the Korea Communications Commission.

**Articles 42-3 and 42-4 Deleted.** <by Act No. 12743, Jun. 3, 2014>

**Article 43 (Establishment, etc.)**

(1) The Korean Broadcasting System (hereafter referred to as the "System" in this Chapter) shall be established as the State's key broadcasting in order to fix a fair and sound broadcast culture, and to efficiently implement the broadcasts for home and abroad.

(2) The System shall be a juristic person.

(3) The location of the System's principal office shall be prescribed by the articles of incorporation.

(4) The System may, if deemed necessary for carrying out its business, establish the regional broadcasting stations upon passage of a resolution by the board of directors.